THE VETERANS ADMINISTRATION, et al. *v.* BULLOCK, et al.

No. 43668          December 6, 1965          180 So. 2d 610

*Watkins & Eager, Wm. E. Suddath, Jr., G. L. Lucas,* Jackson; *Walker & Dillard,* Laurel, for appellants.

*McFarland & McFarland,* Bay Springs; *Lampkin H. Butts,* Laurel, for appellees.

SMITH, J.

The appellants, Veterans Administration and V. L. Miller, Trustee, filed their bill in the Chancery Court of the Second Judicial District of Jasper County against Neil E. Bullock and his wife, Janie Bullock; W. B. Bullock and his wife, Suda G. Bullock; Claude Smith; and, Lampkin Butts, Trustee, appellees, seeking reformation of certain instruments relating to a real estate transaction which involved or affected all of the parties.

The bill alleged that a surveyor erred in stating the location of the beginning point in his description of the lot in controversy and that the parties had, through mutual mistake, used this erroneous description in the instruments sought to be reformed. The bill charged that as a result of this mistake the lot described in these instruments was not the lot intended to be conveyed and encumbered, on which there was a dwelling, but was an entirely different lot, remote therefrom, entirely vacant and consisting of wild land.

Appellees have moved this Court to strike the notes of the reporter and to dismiss the appeal. They assign as the ground for this motion that notice to the court reporter to transcribe her notes was not given within ten days after rendition of the final decree. The circumstances relating to this aspect of the case are as follows.

Upon the conclusion of the trial, the case was taken under advisement. On September 1, 1964, in vacation, the chancellor made his detailed findings of fact and conclusions of law, and on September 5, 1964, this was filed among the papers in the cause. This document concluded, ''ordered and adjudged'', and was signed by the chancellor. Because of these concluding words and other language employed by the court, appellants apparently considered this to be in the nature of an adverse final decree, and on September 5, 1964, gave notice to the court reporter to transcribe her notes for the purpose of an appeal to this Court.

On September 16, 1964, also in vacation, the chancellor signed a final decree which was filed on September 22, 1964. This decree was not submitted to any attorney for appellants prior to its submission to the court for signature. No copy was sent to counsel for appellants and no notice whatever was given to any representative of appellants that it had been prepared and was being submitted to the chancellor. The decree was signed by the chancellor and was filed in the cause and again no notice was ever given by court or counsel to the appellants, who did not learn of the existence of the decree until on or about October 27, 1964. When it was fortuitously discovered that a decree had been entered, on October 30, 1964, appellants gave a supplemental notice to the court reporter to transcribe her notes.

██ █ Reasonable notice and a reasonable opportunity to assert one's rights are fundamental in every concept of due process. ██ █ The almost universal and by far the better practice, in cases of this kind, is to submit proposed decrees to counsel for the opposing party prior to submission to the chancellor for his signature. This is required by Rule 38 of the Rules in Chancery. Griffith, Mississippi Chancery Practice at page 791 (2d ed. 1950).

██ █ Here the decree was neither submitted to counsel for appellants nor were they notified that it was being submitted to the chancellor for signature. After it was signed, they had no notice that it had been signed or filed. It would be unreasonable to require appellants to take notice of the entering of this decree of which they knew absolutely nothing. Under the circumstances in the record, appellees are estopped to question the efficacy of the notice given on September 5, 1964, following the entry of the chancellor's findings of fact and conclusions of law, and to assert that, as supplemented by the subsequent notice, it was not timely. The

motion to strike the reporter's transcript and to dismiss
the appeal is overruled.

W. B. Bullock and his wife, Suda G. Bullock, owned
50 acres of land in the Second Judicial District of Jasper
County, Mississippi, described as:

The East ½ of the NW¼ of the SW¼, Section 19,
Township 10 North, Range 11 West, and the NE¼
of the SW¼, less the East 10 acres thereof, in Section
19, Township 10 North, Range 11 West.

Their son, Neil E. Bullock and his wife, Janie Bullock,
obtained a Veterans Administration loan in the amount
of $9,750.00 to obtain funds with which to purchase an
acre of this land on which there was a dwelling house,
which they intended to occupy as their home. A correct
description of this lot is as follows:

Begin at the SE corner of the NE¼ of the SW¼
of Section 19, Township 10 North, Range 11 West,
and run thence West 330 feet, thence North 465 feet
to a point of beginning; thence West 210 feet, thence
North 210 feet, thence East 210 feet, thence South
210 feet to the point of beginning, containing one
acre, in the Second Judicial District of Jasper County,
Mississippi.

A survey of the property was made, the surveyor's
plat showing a square one acre lot with a frame house
thereon, located on a road. In writing up his description
of the lot, the surveyor stated that the beginning point
of his description was 1320 feet west of the southeast
corner of the Northeast Quarter of the Southwest Quar-
ter of Section 19, Township 10 North, Range 11 West.
In this, he was in error by some 1000 feet, thereby
locating the lot embraced within the calls of the survey
description about 1000 feet from the lot on which the
house was actually situated, although still located upon
the W. B. Bullock 50 acre tract. The lot embraced within
the survey lines contained no house or building of any
kind. It was vacant, wild land, and was not located on

any road. However, both the house and the road were shown on the surveyor's plat. The testimony in the record shows this vacant land to be worth about $100.00 per acre.

The court excluded a written contract of sale and purchase offered by complainants to show the agreement between the W. B. Bullocks as sellers and the Neil Bullocks as purchasers, and excluded testimony offered for the purpose of showing what was said by these parties at the time of the transaction as to the property being sold and purchased.

However, it was abundantly clear that the property intended to be purchased by the Neil Bullocks and to be conveyed by the W. B. Bullocks was the lot on the road and on which the house was located and not a vacant woods lot some 1000 feet distant. Beyond question, this was also the lot which the Veterans Administration intended to accept as security for its loan of $9,750.00, and which the Neil Bullocks intended to encumber as security for their loan.

There is no material conflict in the evidence. The Neil Bullocks defaulted and failed to appear at the trial at all. The W. B. Bullocks were in the courtroom when the case was called, but immediately absented themselves when complainants announced that they were desired as witnesses. A subpoena issued for them was returned "not found", and they did not testify. There is testimony from a surveyor, however, that W. B. Bullock told him that the lot on which the house was situated was the one to be surveyed, and the surveys show the outline of this house upon all of the plats in the record, including the plat containing the error in description.

Suda G. Bullock, wife of W. B. Bullock, also admitted to a witness that there had been "an error in the description of the property". She pointed out to this witness the house as that occupied by her son Neil Bullock. The $9,750.00 proceeds of the Veterans Administration

loan was paid to W. B. Bullock and his wife, Suda G. Bullock, and covered the cost of certain repairs to the house and the payment of the consideration for the conveyance of the real estate.

The error in the survey description was not discovered and occurs in the description contained in the conveyance from the W. B. Bullocks to the Neil Bullocks and in the trust deed from the Neil Bullocks to V. L. Miller, Trustee, securing their indebtedness to the Veterans Administration. The Neil Bullocks defaulted in the payment of their debt and in the subsequent foreclosure, the notices and trustee's deed carried forward the error in description. When the error was finally discovered, the W. B. Bullocks were called upon to rectify the situation but declined to do so. This suit was then brought for the purpose of obtaining a reformation of the deed from the W. B. Bullocks to the Neil Bullocks, and of the trust deed of the Neil Bullocks to V. L. Miller, Trustee, securing the Neil Bullocks' loan from the Veterans Administration so as to cause these instruments to reflect correctly the description of the house and lot situated on the road which were intended to be conveyed rather than the one acre of vacant, wild land 1000 feet away.

■■ ■ There can be no doubt whatever that there was a mutual mistake in describing the property in the conveyance and in the trust deed. In holding to the contrary, the chancellor was manifestly wrong. The situation lends itself to no other reasonable construction. All of the documents and all of the testimony support that conclusion and there is nothing in the record to the contrary except the obvious error of the surveyor in stating the location of the beginning point in the description. Even the surveyor's report of that survey contains within itself and upon the face of the accompanying plat clear and unmistakable evidence that it was the lot on the road and on which the house was situated which was actually surveyed and which was intended

to be described and conveyed, and not the vacant lot with no house or other building upon it, and which was not located anywhere near the road.

Council for appellees do not base their argument upon the premise that the parties actually had in mind the vacant lot of wild land or that they intended to convey that lot rather than the lot on the road containing the dwelling. They argue that, since they had nothing to do with employing the surveyor who made the initial error, the mistake was not a "mutual mistake" but was "unilateral". This position is wholly untenable here, as there can be no doubt that the description employed embraces a vacant lot, worth about $100, which was never intended to be purchased or conveyed, and entirely omits the house and lot, which the parties had in mind, and for which the $9,750.00 was paid out. The repairs were made to the house on that lot and it was surrendered by the W. B. Bullocks to the Neil Bullocks and occupied by the latter pursuant to the conveyance from the W. B. Bullocks. The intention of the parties is manifest and will be given effect since it clearly appears from the whole record what their intention was, especially where every consideration of equity demands it, as it does in this case.

In Hawkins v. Blair, 36 So. 246 (Miss. 1904), the Court said:

It was the manifest intention of all parties that the lot or parcel of approximately two acres reserved in the deed to appellant should include the three houses which were situated in the southeast corner of the tract. This is proven by the conduct of the parties when the sale to appellant was first agreed on, and the attempt made to measure the lot which was to be reserved; by the peculiar shape in which the reservation was platted; by the difference in valuation placed on the two parcels; by the fact that the purchaser of the lot which was reserved entered into

possession of the three houses, and collected and appropriated the rents thereof, without objection on the part of appellant. The facts disclosed by this record are inexplicable upon any theory consistent with the contention of the appellant. A mutual mistake as to the exact location of the true boundaries of the tract, and consequent incorrectness of the measurements, gave rise to such confusion and conflict as amply justified a court of equity in reforming the instruments, and making them conform to the real agreement of the contracting parties. (36 So. at 247)

And in Birchett v. Anderson, 160 Miss. 144, 150, 133 So. 129, 131 (1931), this Court said, ''. . . it was not the description of the land that the parties intended to write into the Deed, but what land the parties intended to embrace in the description they used.''

In Miles v. Miles, 84 Miss. 624, 37 So. 112 (1904), this Court held that the instrument involved should have been reformed since the description of the property which was contained in the deed did not describe the property which the parties to the instrument intended for it to embrace. The Court stated:

And a court of equity will like wise interpose and correct a mistake of fact, even though the parties employ the very terms they designed to use. The rule is not different where there is a mistake in the omission or insertion of words contrary to the intention of the parties, and when they, . . . believe it (the description) to correspond with the actual boundaries of the lands intended to be conveyed and are mistaken. (84 Miss. at 638, 37 So. at 114).

■■ The trust deed executed by the Neil Bullocks securing the Veterans Administration loan, a copy of which is exhibited with the bill of complaint, should have been reformed so as to reflect that the property conveyed by the grantors to the trustee, V. L. Miller, was the one acre lot upon which the house was situated and

which was the lot intended to be conveyed by the grantors, a correct description of which is given above. Likewise, the description in the deed from the W. B. Bullocks to the Neil Bullocks should have been reformed so as to reflect that the property conveyed by that instrument was that same lot upon which the house was situated and the correct description of which is set out in this opinion.

The lot in question was a part of a tract of land belonging to the W. B. Bullocks, containing 50 acres. Following the transactions described above, the W. B. Bullocks gave a trust deed on this land securing an indebtedness to appellee Claude Smith. The description in this instrument excepted the one acre vacant lot shown by the erroneous survey, but failed to except the one acre lot containing the house, and which is described above.

There is a close question upon the record as to whether or not Claude Smith at the time he took his trust deed from the W. B. Bullocks was in possession of sufficient information as to the adverse occupancy of the house and lot in question to impose upon him the duty of following it up and of making a reasonable effort to determine the rights or title of the occupants, and whether his failure to investigate and make the inquiry demanded by ordinary prudence, constituted such negligence on his part as to charge him with notice that this property was actually occupied under claim of ownership by the Neil Bullocks.

Quoting from 20 R. C. L. 346, this Court in Stanley v. Stanley, 201 Miss. 545, 551, 29 So. 2d 641, 644 (1947) said:

Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of the facts which would lead an ordinarily prudent

man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts.

See, also, Adams v. Hill, 208 Miss. 341, 44 So. 2d 457 (1950).

■■ The chancellor found that Smith, in taking his trust deed, was an innocent purchaser for value without notice. This finding will not be disturbed in so far as it establishes priority of Smith's lien. It will be modified, as required by the equities of the case, to the extent that, in the event of sale under foreclosure of this instrument, that portion of the encumbered 49-acre tract which is not in dispute shall be offered at the sale first; then, but only in case of a deficiency, the one acre lot in controversy.

■■■ Before the mistake in the description was discovered, the Veterans Administration's trust deed was foreclosed and the Veterans Administration became the purchaser at the sale. This foreclosure, in which the notices and trustee's deed, through error, employed a description of an entirely different and vacant lot, cannot be sustained. It is necessary to a valid sale under foreclosure that prospective purchasers be informed by the notices as to the exact property being offered in order that bids may represent a fair price for the particular property involved.

The record shows that the debt of the Neil Bullocks, secured by the Veterans Administration trust deed, is in default, and if it should remain unpaid, a new foreclosure of this trust deed, as reformed, using the above correct description of the property, will be necessary. Upon such foreclosure the purchaser shall acquire title to the house and one acre lot, description of which is set out in this opinion, free and clear of all claims of W. B. Bullock and his wife, Suda G. Bullock, and of Neil E. Bullock and his wife, Janie Bullock, and subject

only to the lien of the trust deed held by appellee, Claude Smith.

The evidence in the record indicates that, exclusive of the house and one acre lot in controversy, there are two other houses located on the 49-acre tract which comprises the security in the Claude Smith trust deed. It further appears that the land itself is worth approximately $100 an acre. Smith testified that the balance owing him at the time of the trial was $3,000.00, plus accrued interest. Apparently the real estate embraced in his trust deed, exclusive of the house and lot here in question, is more than adequate to produce upon a sale the amount of the debt with interest and reasonable foreclosure costs. This trust deed was in default at the time of the trial and in the event of a foreclosure, the 49 acres shall be advertised and offered for sale in two tracts. First, there shall be offered for sale all of the 49-acre tract except the one acre lot described above upon which is situated the house intended to be conveyed by the W. B. Bullocks to the Neil Bullocks and intended to be encumbered by them as security for their Veterans Administration loan. If the sale of such part of the 49-acre tract shall produce an amount sufficient to pay and discharge so much of the above $3,000.00 balance as may then remain unpaid, together with accrued interest, and reasonable foreclosure costs, then such one acre tract shall not be sold and the trust deed of the Veterans Administration shall become a first and paramount lien thereon. If the sale of the 49-acre tract, exclusive of the one acre tract above referred to and correctly described in this opinion, should fail to produce an amount sufficient to pay the balance of the Claude Smith debt, with accrued interest and reasonable foreclosure costs, then such one acre tract shall be offered for sale and sold and so much of the proceeds as may be necessary shall be applied to the deficiency.

In the event that the Veterans Administration should elect to foreclose its trust deed, as reformed, before a

foreclosure of the Claude Smith trust deed shall have occurred, the purchaser at the foreclosure sale thereunder shall acquire title to the above described one acre tract, free and clear of all claims of W. B. Bullock, Suda Bullock, Neil Bullock and Janie Bullock, subject only to the lien of the Claude Smith trust deed thereon, which lien shall extend only to the deficiency, if any, that may remain in satisfying the W. B. Bullock indebtedness to Smith, with interest and reasonable foreclosure costs, after applying thereto the proceeds of a sale of the 49-acre tract, exclusive of the above described one acre tract.

Reversed and judgment here for appellants against W. B. Bullock, Suda Bullock, Neil Bullock and Janie Bullock; affirmed, as modified, as to Claude Smith and Lampkin Butts, trustee.

*Lee, C. J., and Rodgers, Patterson, and Inzer, JJ.,* concur.