# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00101-COA

MICHAEL V. WARD AND AMY S. WARD                      APPELLANTS

v.

CAROLYN P. HARRELL                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/30/2014 |
| TRIAL JUDGE: | HON. CYNTHIA L. BREWER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | BENTLEY E. CONNER |
| ATTORNEY FOR APPELLEE: | OTIS JOHNSON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | REFORMED DEED IN FAVOR OF APPELLEE |
| DISPOSITION: | AFFIRMED - 02/23/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LEE, C.J., FOR THE COURT:**

¶1.     The following language—appearing in a 1979 warranty deed—gives rise to this appeal: "The *Grantee* herein retains all mineral rights on said land and property." (Emphasis added).  The chancellor reformed the deed to reflect that the *grantor* retained all mineral rights.  Although the chancellor applied an erroneous legal standard, because there is evidence beyond a reasonable doubt to support reformation based on mutual mistake and a scrivener's error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On July 31, 1969, Mrs. Charles H. Denson conveyed—by warranty deed—a parcel

of land to James L. Harrell and his first wife, Elizabeth Harrell, as joint tenants with full rights of survivorship.

¶3.    On November 28, 1977, James and Elizabeth executed an oil, gas, and mineral lease to Texas Pacific Oil Company Inc., which covered the parcel of land.[1]  On the same day, James—as a widower—executed two additional oil, gas, and mineral leases to Texas Pacific Oil Company Inc.[2]  Elizabeth died on February 4, 1978.   And on August 15, 1979, James executed a correction of the description.

¶4.    On August 18, 1979, James conveyed the parcel of land to L.L. Martin and his wife, Cherry Martin, as joint tenants with full rights of survivorship.  The warranty deed stated: "The *Grantee* herein retains all mineral rights on said land and property." (Emphasis added).

¶5.    On April 25, 1997, the Martins conveyed the parcel of land to Michael V. Ward and his wife, Amy S. Ward, as joint tenants with full rights of survivorship.  The deed was subject to the exception: "All oil, gas[,] and other minerals in, on[,] and under the above described property which have been previously reserved or conveyed."

¶6.    On October 18, 2007, the Wards executed an oil, gas, and mineral lease to Denbury Onshore LLC.  The lease agreement provided for a 3/16th royalty from the carbon dioxide produced on the parcel of land.  And on January 11, 2010, James executed an oil, gas, and mineral lease to Denbury.  The lease agreement likewise provided for a 3/16th royalty from the carbon dioxide produced on the parcel of land.

---

[1] The lease was notarized on December 1, 1977.

[2] These leases were notarized in October 1978.

¶7.     On January 19, 2010, James executed a special warranty mineral deed to himself and his second wife, Carolyn P. Harrell, as joint tenants with rights of survivorship. James died on July 9, 2011.

¶8.     When the Wards realized that royalties were being paid to Carolyn, they filed a complaint in the Chancery Court of Madison County, Mississippi, to remove cloud on their title, quiet and confirm title, and recapture any royalties paid in error to Carolyn. Carolyn counterclaimed to reform the deed and to remove the Wards' lease as a cloud on her title. Carolyn also cross-claimed against Denbury to remove cloud on her title and cancel the oil, gas, and mineral lease from the Wards.[3] Finally, Carolyn filed a third-party complaint against the Martins because they were the grantees in the 1979 warranty deed.[4]

¶9.     At trial, the Wards claimed the 1979 warranty deed should have been interpreted in accordance with its plain meaning—that the grantee retains all mineral rights. Whereas, Carolyn claimed the deed should have been reformed to "Grantor . . . retains" based on mutual mistake and a scrivener's error.

¶10.    Ultimately, the chancellor reformed the deed in favor of Carolyn. From this, the Wards appeal, raising numerous issues. We have narrowed the issues as follows: (1) whether the chancellor applied an erroneous legal standard, and (2) whether the evidence supports reformation of the 1979 warranty deed.

---

[3] The chancery court dismissed Denbury but retained jurisdiction over Denbury for the limited purpose of depositing future accrued funds and cancelling any liens or clouds on the title of the prevailing party.

[4] The Martins did not file an answer or enter an appearance.

**STANDARD OF REVIEW**

¶11.    "Appellate courts employ a limited standard of review on appeals from a chancery court." *McNatt v. Turbeville*, 162 So. 3d 881, 883 (¶9) (Miss. Ct. App. 2015) (citing *Miller v. Pannell*, 815 So. 2d 1117, 1119 (¶9) (Miss. 2002)). "We will not disturb the chancellor's factual findings if they were supported by substantial evidence." *Id.* (citing *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 13-14 (¶17) (Miss. 2007)). "However, we will [not hesitate to] reverse the chancellor if [she] abused [her] discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Id.*

¶12.    "Where a [chancellor] misperceives the correct legal standard to be applied, the error becomes one of law, and [this Court will] not give deference to the [chancellor's] findings . . . ." *Brooks v. Brooks*, 652 So. 2d 1113, 1117 (Miss. 1995). "Instead, [we review] questions of law de novo." *Id.* (citing *Bank of Miss. v. Hollingsworth*, 609 So. 2d 422, 424 (Miss. 1992)). "And, after review, if warranted, [we] will reverse the [chancellor] because of an erroneous interpretation or application of the law." *Id.* (citing *Carter v. Taylor,* 611 So. 2d 874 (Miss. 1992)).

**DISCUSSION**

**I.      Legal Standard**

¶13.    In reforming the 1979 warranty deed, it appears that the chancellor relied solely on *Pursue Energy Corp. v. Perkins,* 558 So. 2d 349 (Miss. 1990). In that case, our supreme court set out a three-tiered approach for construing and interpreting written instruments when

an ambiguity exists.[5]  *Id*. at 351-53.

¶14.    However, contract construction, or interpretation, is distinguishable from contract reformation.  Essentially, reformation is a remedy—the changing of words—to a contract-formation defense.  In contrast, rules of construction, or interpretation, do not change the actual words of the contract but determine the meaning of those words.

¶15.    Although an ambiguous deed may be reformed,[6] when a deed is unambiguous, "the party asserting reformation must prove (1) a mistake on the part of both parties; or (2) a mistake on the part of one party with fraud or inequitable conduct on the part of the other party; or (3) an error on the part of the scrivener." *In re Estate of Summerlin*, 989 So. 2d 466, 480 (¶47) (Miss. Ct. App. 2008) (quoting *Bacot v. Duby*, 724 So. 2d 410, 417 (¶35) (Miss. Ct. App. 1998)).  "Moreover, the mistake must be proven beyond a reasonable doubt." *Id*.

¶16.    Here, we do not find the language at issue in the 1979 warranty deed to be ambiguous. *See Cypress Springs LLC v. Charles Donald Pulpwood Inc.,* 161 So. 3d 1100, 1104 (¶13) (Miss. Ct. App. 2015) (finding an instrument is ambiguous if one or more terms or provisions are susceptible to more than one reasonable meaning).  Therefore, the chancellor's reliance on the standard set forth in *Pursue Energy Corp.* was erroneous. *See* 17A C.J.S. *Contracts* § 386 (2011) (The "[r]ules of construction may be used only where the language of the

---

[5] (1) The court is to look solely to the language contained within the "four corners" of the instrument; (2) if the language within the instrument's "four corners" is ambiguous, the court applies the relevant canons of construction in a discretionary manner; and (3) if the intent of the parties is still unknown, the court looks to extrinsic evidence. *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352-53 (Miss. 1990).

[6] *Estate of DeLoach v. DeLoach*, 873 So. 2d 146, 150 (¶14) (Miss. Ct. App. 2004).

contract, or a portion of it, is ambiguous.").

¶17.    As such, we do not give deference to the chancellor's findings of fact and conclusions of law.  *See Brooks*, 652 So. 2d at 1118.  Instead, we review the record de novo.  *See id.*

## II.    Reformation

¶18.    As stated, "the party asserting reformation must prove (1) a mistake on the part of both parties; or (2) a mistake on the part of one party with fraud or inequitable conduct on the part of the other party; or (3) an error on the part of the scrivener."  *Summerlin*, 989 So. 2d at 480 (¶47) (quoting *Bacot*, 724 So. 2d at 417 (¶35)).  "Moreover, the mistake must be proven beyond a reasonable doubt."  *Id.*

¶19.    Carolyn—the party asserting reformation in this case—does not claim that there was a mistake on the part of one party, with fraud or inequitable conduct on the part of the other party.  Therefore, we will only address whether there was a mistake on the part of both parties or an error on the part of the scrivener.

### A.    Mutual Mistake

¶20.    Mutual mistake occurs when both parties—here, James and the Martins—intended something other than what was reflected in the instrument in question.  *Kelly v. Barry*, 115 So. 3d 131, 134 (¶12) (Miss. Ct. App. 2013).

¶21.    It is evident from James's actions that he intended to retain all mineral rights on the parcel of land.  On November 28, 1977, James and Elizabeth executed an oil, gas, and mineral lease to Texas Pacific Oil Company Inc.  And on the same day, James executed two additional oil, gas, and mineral leases to Texas Pacific Oil Company Inc.  Furthermore,

6

James executed a correction of description three days before conveying the land to the Martins.[7]

¶22. With respect to the Martins, there is no indication that they ever attempted to claim rights to the minerals. Furthermore, when the Martins conveyed the parcel of land to the Wards, the deed was subject to the following exception: "All oil, gas[,] and other minerals in, on[,] and under the above described property which have been previously reserved or conveyed." This language shows an understanding by the Martins that the mineral rights had been previously reserved. For these reasons, we find there was evidence beyond a reasonable doubt to support reformation based on mutual mistake.

### B. Scrivener's Error

¶23. At trial, Kenneth A. Rutherford—an attorney who consulted with James in connection with his conveyance of the parcel of land to the Martins—stated: "The only error with which I am familiar is the use of the word 'grantee,' which should have been 'grantor.'"

¶24. As a matter of law, a reservation[8] cannot be made by the grantee in the deed. Only the grantor can make a reservation out of the estate granted. *See Thornhill v. Ford*, 213 Miss.

---

[7] The Wards claim that because the 1979 warranty deed does not bear any mineral tax stamps, James did not intend to sever and reserve the minerals. However, the authority that the Wards cite does not support their argument. *See In re B.S.,* 105 So. 3d 1120, 1122 (¶8) (Miss. 2013). We do not find any reference to a lack of mineral tax stamps as having any effect on a reservation of minerals in a conveyance. *See* Miss. Code Ann. §§ 27-31-71 to -87 (Rev. 2010). Rather, it is the duty of the chancery clerk to collect the tax or otherwise be liable to the county. Miss. Code Ann. § 27-31-81 (Rev. 2010).

[8] The word "retains" is comparable to the word "reserves." *See Westbrook v. Ball*, 222 Miss. 784, 788, 77 So. 2d 274, 275 (1955) (finding a party reserved minerals using the following language: "The grantor retains").

49, 63, 56 So. 2d 23, 29 (1952) ("A reservation or exception can only be out of the estate granted."); *see also* Miss. Code Ann. § 27-31-77 (Rev. 2010) (". . . or excepted or reserved to a grantor . . . ."). For these reasons, we find there was evidence beyond a reasonable doubt to support reformation based on a scrivener's error.

## CONCLUSION

¶25.    It is evident from the language employed in the chancellor's opinion and final judgment that she applied an erroneous legal standard. Nevertheless, upon review, we find evidence beyond a reasonable doubt to support reformation based on mutual mistake and a scrivener's error. Therefore, we affirm.

¶26.    **THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. WILSON AND GREENLEE, JJ., NOT PARTICIPATING.**